IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID EADS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-047 |
| | ) | |
| DR. DAVE CHENEY and STANLEY HOLDREN, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendant Holdren filed a pre-answer motion to dismiss. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant Holdren's motion to dismiss be **GRANTED**, (doc. no. 31), and Defendant Holdren be **DISMISSED** from this civil action.

**I.   BACKGROUND**

Plaintiff initially named Defendants Dr. Dave Cheney ("Dr. Cheney") and Maintenance Supervisor Stanley Holdren, and because he is proceeding IFP, the Court screened the complaint. (See doc. nos. 1, 13-15, 20.) On November 8, 2023, United States District Judge Dudley H. Bowen, Jr., dismissed all official capacity claims for monetary damages against these two Defendants. (Doc. no. 20.) The Court allowed Plaintiff's Eighth Amendment deliberate medical indifference claim against Defendants to proceed. (Id.) Defendant Holdren

now moves to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 31.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

Plaintiff's complaint alleges he was diagnosed with Parkinson's disease approximately four years ago. (Doc. no. 1, p. 7.) Because of his diagnosis, Plaintiff has been assigned to the maintenance detail only to sweep and clean. (Id. at 7-8, 13.) Plaintiff's Parkinson's disease was well-known and documented in his inmate file. (Id. at 13.) On November 3, 2021, around 8:00 a.m., Plaintiff was working in maintenance under the supervision of Defendant Holden, who was aware of Plaintiff's condition. (Id. at 5.) That day, Defendant Holden instructed Plaintiff to climb a twelve-foot ladder and install lights. (Id. at 5, 8.) Inmate Charles Wofford tried to steady the ladder from the ground as Plaintiff worked to install the lights. (Id. at 5.) Defendant Holden left the area while they worked. (Id.) A few moments later, the ladder gave way and collapsed—likely due to the ladder being faulty and Plaintiff shaking—which caused Plaintiff to drop twelve feet onto the ground and land on his left hip. (Id. at 5, 7, 13.) Defendant Holden came back to the area after hearing Plaintiff and Wofford's cries for help. (Id. at 7, 13.) Plaintiff could not get off the ground and was transported to medical by golf cart. (Id. at 7, 13-14.)

Upon arrival at medical, Dr. Cheney repeatedly told Plaintiff to "get up" and "start walking" because Defendant was "faking it." (Id. at 8, 14.) For the next seven hours, Dr. Cheney repeatedly instructed Plaintiff to stop "faking it" and refused to provide Plaintiff with any pain medication or other medical assistance, even after Plaintiff told Dr. Cheney he was "numb on the lower half of his body" and could not move. (Id. at 7-8, 14-16.) Dr. Cheney

2

even instructed Nurse Foskey to give Plaintiff a pair of crutches so Plaintiff could "walk back to his dormitory." (Id. at 8.)

At approximately 3:30 p.m., seven hours after his fall, Dr. Cheney finally sent Plaintiff to the Dodge County Hospital. (Id. at 14-15.) While at the hospital, Dr. Rosenbaum informed Plaintiff he had an "irregular hip fracture" that would require hip replacement surgery. (Id. at 9, 15.) Plaintiff had the surgery several days later. (Id.) For relief, Plaintiff requests compensatory and punitive damages. (Id. at 18.)

In support of his motion to dismiss, Defendant Holdren produced the sworn declaration of Anntionette Johnson, the Chief Counselor and Grievance Coordinator ("Chief Counselor") at TSP. (See doc. no. 31-1 ("Johnson Decl.") The Chief Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 2.) The Chief Counselor identified two grievances (nos. 335927 and 346855) Plaintiff filed at TSP. (Id. ¶¶ 11-13; attach. 1, pp. 25-40.) Neither grievance contains any allegations regarding the instant suit against Defendant Holdren. (Johnson Decl. ¶¶ 12-14; attach. 1, pp. 24-40.) Instead, both grievances complain of issues related to Dr. Rosenbaum and Dr. Cheney's medical treatment. (Id.) There is also no record of any appeal for either grievance. (Id.)

## II. DISCUSSION

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both

parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an

action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules

5

governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

According to the Chief Counselor, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Johnson Decl. ¶ 3; attach. 1, pp. 6-24.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. Id. § IV(C)(1)(c-d). The grievance is forwarded to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). Once the offender receives the Warden's response, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id. § IV(C)(2). The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § IV(C)(2)(e).

### C. Plaintiff's Failure to Exhaust

Plaintiff signed his complaint on June 14, 2023, and it was filed in the Southern District of Georgia on June 16, 2023. (Doc. no. 1, p. 6.) The Chief Counselor identified two grievances, (nos. 335927 and 346855), Plaintiff filed having to do with the facts of the complaint, but neither grievance names Defendant Holdren nor alleges he did anything to Plaintiff. (Johnson Decl. ¶¶ 11-13; attach. 1, pp. 25-40.) Moreover, neither grievance was appealed. (See id.) Plaintiff acknowledges in his complaint there is a grievance procedure and claims that he filed a grievance and an appeal, however, he did not provide any information about the grievance or outcome of his appeal. (Doc. no. 1, pp. 3-4.) Since Plaintiff did not respond to the motion to dismiss, there is no dispute that the only grievances he filed that could possibly relate to this lawsuit regarding his fall from a ladder and subsequent medical treatment only concerns Dr. Cheney, and not Defendant Holdren.

Thus, under step one of Turner, the Court concludes Plaintiff filed no grievance with regard to the claim asserted against Defendant Holdren. See Turner, 541 F.3d at 1082. Because Plaintiff did not exhaust his administrative remedies with respect to his claim forming the basis of this lawsuit against Defendant Holdren prior to initiating this case, Defendant Holdren's motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant Holdren's motion to dismiss be **GRANTED**, (doc. no. 31), and Defendant Holdren be

7

**DISMISSED** from this civil action.  Should the presiding District Judge adopt this Report and Recommendation, this case shall proceed only as to Plaintiff's medical deliberate indifference claim against Dr. Cheney.

SO REPORTED and RECOMMENDED this 2nd day of February, 2024, at Augusta, Georgia.

*[signature]*

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA